

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

U.S. )
Plaintiff, )
)
)
v. ) Case No. 07-mj-258 AK
)
Christopher Lee Orloski, )
)
Defendant )

MOTION TO DISMISS

Defendant, Christopher Lee Orloski, moves the Court to dismiss the case on three grounds: military secrecy privileges, first amendment privileges and due process privileges.

1. Military Secrecy Privileges

1.1 <u>Stealth operation in London 2005DEC29 to 2006APR08</u> Orloski advises this Court that in 2006FEB he secured in person private directories of the Maritime British Courts from the chambers of the courts in London and subsequently delivered copies of the court's directories in person to the Russian embassy in London, England (herein "ivan"). Ivan found utility in the directory's codifications in the patterns of intentional superfluous repetitions of phone extension digits. A fragment of the directory remains in Orloski's work product seized by U.S. Capitol Police (USCP) on 2007JUN04. Ivan subsequently captured the British "spy rock" in 2006 while Orloski continued research in London. See <u>The Guardian</u>, U.K. newspaper, 2006FEB-MAR articles on "spy rock" online at www.theguardian.co.uk. See <u>Totten v. U.S.</u>, 92 US 105 at 106 regarding protection of agent

character and constitution, military secrecy privileges and secret contracts: "public policy forbids the maintenance of any suit in a court of justice...which (leads) to disclosure of matters which the law itself regards as confidential."

    1.2 <u>The British Asian females</u> Further, Orloski met a female British Asian store owner in Southall, England, U.K., who sequestered his U.S. passport in preparation for evaluation of U.K.'s National Health Service (NHS) at Hillingdon Hospital in Uxbridge, England in 2006MAR. Had Orloski had more than GBP 50.00 in his possession, the British Asian woman of Pakistani and Kenyan descent would be in possession of Orloski's passport today. See <u>Tenet v. Doe</u>, 544 US 1 at 11 for prohibition of judicial intervention in military contracts, state secrets and espionage relationships. See where the buck stops in <u>Doe</u> when it comes to graymail in litigation.

    1.3 <u>Constitutional Defender's SECS (Social Engineering Case Studies)</u> Orloski extends his diplomacy irrespective of cause to eradicate the U.S. DoJ's National Security Division operating in accordance with 28 C.F.R. Sec 0.72 (2007MAR03 USAG order). As a defender of the U.S. Constitution, Orloski asserts that his activities described herein were and are necessary to preserve U.S. national security which in turn preserves the supreme law of the United States. Orloski's social engineering case studies (SECS) and Orloski's work product, captured by USCP on 2007JUN04 constitute efforts to determine a corrective course of action to address abuse of law and compromised delegation of national security roles by U.S. law enforcement agencies (LEAs), agencies under Title 50 U.S.C., and by U.S. DoJ. The SECS are sensitive and privileged for specific U.S. agencies, therefore subject to rules in <u>Totten</u> and definitions and rules in 50 U.S.C. Sec 401a, <u>Tenet</u> referencing <u>Reynolds</u> regarding state secrets.

1.4 <u>DIA connection and preliminary contract</u> On 2007JAN16, the U.S. Defense Inteligence Agency (DIA) via email responded to Orloski's inquiry submitted on course of action (Pentagon v. 100+ embassies in Washington, DC). See 50 U.S.C. Secs 401a(1,2,3,4(B-G,H,J),5) with respect to U.S. atomic civil war incubated by the State of Texas. See 2004AUG09 amendment to 50 U.S.C. Sec 191 (transf. from Sec 42): "The President... appropriate(s)...provisions of this title." Orloski holds the DIA's 2007JAN16 response, encrypted therefore secret, to be a preliminary contract. DIA advised Orloski to proceed to apply to DIA via Avue Digital Service's (Avue's) online electronic application. Orloski traveled from Tampa, FL to Washington, DC on 2007JAN19 via JetBlue/JFK using his remaining financial resources. Per DIA's instruction, Orloski tested security for potential DIA candidates using Avue. The test methods, protocols, parameters, data and results were captured by USCP on 2007JUN04. DIA application metrics are restricted for use only by DIA and pursuant to Title 50 U.S.C. as employment data is protected against disclosure for protective purposes as demonstrated in <u>Totten</u>.

1.5 <u>U.S. DoD mission secrecy v. U.S. DoJ political objectives</u> It would seem obvious that Title 50 U.S.C. and Title 32B C.F.R. would be protected from intrusion by DoJ's 28 C.F.R. Sec 0.72 on grounds that U.S. DoD mission secrecy during peacetime and war is the kernel of national security's "loose lips sink ships". See 50 U.S.C. Sec 7306a(c) (sink exercises) and <u>U.S. v. United Continental Tuna</u>, 425 US 164 (naval destroyers).

1.6 <u>Dismissal</u> Orloski proposes that this Court has no jurisdiction or authority to prosecute a "chlorine" text in context of military secrecy privileges and in context of communication between Orloski and the United States Defense Intelligence Agency.

2. First Amendment Privileges

2.1 <u>Freedom to make political statements and publicize social science research</u> Were the Court to construe Orloski's transparent connection and contract with DIA as inconsequential (military secrecy privileges), first amendment privileges protect Orloski's work product and social engineering tests and SECS: <u>Reno v. ACLU</u>, 521 US 844. <u>Reno</u> clearly protects citizen speech in political arenas where content of speech may be construed as (an electronic) indecent threat. See also <u>Watts v. U.S.</u>, 394 US 705 at 707 (political debate) and <u>RAV v. St. Paul</u>, 505 US 377 facially violative statutes in conflict with First Amendment.

3. Due Process Privileges

3.1 <u>Fifth Amendment and Fourteenth Amendment privileges</u> In view of a pattern of prosecutorial misconduct and investigative misconduct by the prosecuting agencies, a dismissal of the case is warranted. An implausible charge of "threat to use chemical weapons (chlorine)" (per USCP on 2007JUN04), "perpetrating a hoax" (per USCP on 2007JUN04) and "threat to burn Senate" (per DOJ-BOP-FMC's Pyant on 2007JUL24) is based on groundless science, political motivation, and other motivations contrary to Amendments Five and Fourteen, C.F.R., U.S.C. and applicable agency policies and federal court rules (F.R.Crim.P.).

3.2 <u>Retaliation by U.S. DoJ</u> Orloski filed federal civil actions against U.S. DoJ in the DC district courts in 2007. U,.S. DoJ responded with a criminal complaint against Orloski on 2007JUN04. Therefore, the case should be dismissed on grounds of malprosecutorial retaliation. See <u>Harper v. U.S.</u> 27 F.2d 77 (CA8 Ark) at 78 (false prosecution).

3.3 <u>Erroneous forensic science</u> The underlying charge is based on groundless science that ignores topography, chemistry, physics, meteorology, operation capacity and financial solvency. Orloski had

USD 47.96 in cash and a USD 117.30 JetBlue travel credit by USCP on 2007JUN04. The operational complexity of releasing a detrimental quantity of chlorine gas from liquified state (unless using hot rarified chlorine gas in a fleet of hot "air" balloons piloted by suicide balloon pilots) precludes Orloski's possible execution of any alleged threat of using chemical weapons. Rudimentary grade school calculations demonstrate that operational complexity is high due to topography of the Hill (U.S. Congress), physical and chemical properties of liquid and gaseous chlorine, climate and weather. See <u>U.S. _ House v. Bell</u>, 547 US ___ (2006) and <u>Kuhmo Tire Company v. Carmichael</u>, 526 US 137 at 149 (gatekeeping) for evidentiary disarray, false report and erroneous forensic science caused by political agenda of a charging agency.

    3.4 <u>Chlorine (Cloreen) ($Cl_2$)</u> At STP (0 deg C and 1 atm) chlorine gas density is 3.21 g/l and air density is 1.29 g/l, per Kaplan's <u>High School Chemisry</u>. Chlorine drops like a rock in motionless air. Of course, USCP's allegation could involve dumping the Atlantic Ocean illed with sodium ions and chlorine ions on the Capitol Building in DC, in which case the ionic charge of "threat to use Virgin water (Atlantic)" is a malapropism. See <u>Harper</u> at 78 for effects of malallegation (herein false prosecution) by a charging agency. The imprecision of the government's charge is compounded by chlorine's ability to bind with many elements to form francium chloride, lithium chloride, cesium chloride, hydrochloric acid, perchlorates used in emergency oxygen generators on commercial airliners, sodium hypochlorite, and chlorinated water in the U.S. Senate's heatedindoor swimming pools. See Cobra Bubbles' character in Disney's <u>Lilo and Stitch</u> cinematic film regarding when "things have (definitely) gone wrong". See also <u>supra</u> at inale for Stitch's character's "ohana" fruition.

3.5 <u>The Alberto factor in 18 U.S.C.</u> GONZALES/ALBERTO/(U.S. ATTORNEY GENERAL's) departure is absolute confirmation of impermissibility of political <u>modus operandi</u> of U.S. LEAs. Reference also 2006 firings of 9 U.S. Attorneys in 8 states which culminated in GONZALES' removal. See Orloski's federal civil action complaint styled <u>MAS v. BUSH/GEORGE/W et al</u>, in which GONZALES' removal is specified. The complaint is available at www.geocities.com/usdcdc_dcgov/ in Adobe pdf format. Orloski asserts that although he may represent a <u>political</u> threat to torteasors (officials of the U.S. government), exercise of freedom of speech and of military secrecy do not warrant USCP/U.S. Attorney/U.S. FBI violations of due process privileges afforded by the U.S. Bill of Rights. 18 U.S.C. Sec 1623 (perjury) to cause indefinite incommunicado confinement (see <u>Hamdi v. Rumsfeld</u>, 542 US 507) is prohibited by the U.S. Bill of Rights.

It is therefore requested that this Court dismiss this case on grounds of military secrecy privilegs, secret contract protection, first amendment privileges and due process privileges.

                                        Respectfully submitted,

                                        Christopher Orloski, defendant
                                        28994-016 Unit 2H
                                        FMC-Butner
                                        P.O. Box 1600
                                        Butner, NC 27509-1600

## Certificate of Service

This motion is submitted via USPS (via FMC, Butner, NC staff) to the USDCDC Clerk on 2007SEP__. A copy is submitted to the USCOADC Clerk in the event that the racial torteasors in the District Court Clerk's Office are incompetent with respect to filing procedures (refuse to file pleadings per Fed. R. Crim. Pro. 12(a)).

Respectfully submitted,

*/s/*

Christopher Orloski, deendant
28994-016 Unit 2H
FMC-Butner
P.O. Box 1600
Butner, NC 27509-1600

Case 1:07-mj-00258-AK-RCL    Document 10    Filed 09/13/2007    Page 8 of 8

2007AUG30

Christopher Orloski
28994-016 Unit 2H
FMC-Butner
P.O. Box 1600
Butner, NC 27509-1600

U.S. Federal Bureau of Investigation
Office of the Deputy Director
935 Pennsylvania Ave NW
Washington, DC 20535

Subject: 18 USC §§ 1622, 1623, 1506 against USDCDC/USFPD/USATT-DC

Honorable Staff and the Deputy Director Gebhardt:

Please reference an inspect USCOADC case 07-5210 (appeal) in In re Christopher Orloski for additional direction. See also U.S. v. Christopher Lee Orloski in USDCDC.

An inquiry is presented to this office to determine pursuability of 18 USC §§ 1622, 1623, 1506 in addressing a pattern of violations by the USDCDC Clerk (USDCDC), U.S. FPD counsel (USFPD), court-appointed (witnesses) experts (doctors), U.S. Attorney prosecutors (USATT-DC), and U.S. Capitol Police (USCP). Specifically, will the U.S. FBI address perjury, subornation of perjury and obstruction of justice by agencies mandated by law to prevent these very violations?

+ USCP and FBI, in institution of false charges and invocation of false committals to DCDC and US-DOJ-BOP-FMC (Butner, NC) (FMC), violate 18 USC §§ 1621 and 1622 in causing perjury and subornation of perjury

  + USATT-DC in USDCDC on 2007JUN05 perjured in citing FBI statements claiming "flight risk", although subject had returned voluntarily to DC from IAD after aborting a JetBlue flight to TPA on 2007JUN04
  + USCP perjured in USDCDC to instigate charge of "threat to use chemical weapons (chlorine)" on 2007JUN04
  + USATT-DC on 2007JUN04 caused FMC committal based on perjured testimony by court-appointed expert TEAGARDEN and falsification of evidence by FBI regarding an audit of State of Maryland's mental health statutes
  + See 18 USC § 1622, U.S. v. Silverman (CA3 Pa) 106 F2d 750 citing Act of Congress 1790APR03, Chapter 9, Section 18, 1 Statute 116, ("preparation in secret or underhand manner") (subornation of perjury); see on or two witness rule in Stein v. U.S. (CA9 Cal) 337 F2d 14; see proof beyond reasonable doubt requirement in 18 USC § 1623(e) with materiality requirement in U.S. v. Dipp (CA9 Nev) 581 F2d 1323 and capable of influence in U.S. v. Cosby (CA5 Ga) 601 F2d 754.

+ USFPD counsel and USDCDC (Clerk) conspired to disallow pleadings and demonstration of competency (reversal of impeachment), thereby obstructing justice twice on 2007AUG07 and 2007AUG15

**FILED**

SEP 13 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

2007AUG30 IB j6ebdfar at RCUSDCDC
Case 1:07-mj-00258-AK-RCL  Document 10-2  Filed 09/13/2007  Page 2 of 2
2/2
USCOADC 07-5210 exhibit 04.01

+ 2007AUG07: rejection of a notice of communication (NOC) (subsequently filed in USCOADC case 07-5210 instead) received by USDCDC 2007JUN31; pleading demonstrates ability to confer with counsel
+ 2007AUG15: a letter to Judge Facciola referencing a 2007AUG09 tortfeasor communication to U.S. Defense Intelligence Agency received by USDCDC 2007AUG13
+ See U.S. v. Kane (CA3 Pa) 433 F2d 337 in which Judge Kraft cites Holland v. U.S., 348 US 121 ("evidence in the record" demonstrating effect on process and obstruction of justice in 18 USC § 1506: "feloniously...takes away...record,...process...in any court in the United States...whereby any judgment is reversed, made void or does not take effect"

It is respectfully requested that these violations be investigated pursuant to USC, CFR and FBI policy. Even in year 1750 B.C., Hammurabi's Code prescribed solutions to prosecutorial misconduct and judicial misconduct in its first law. Law 1: "If a man brings an accusation against another man, charging him with murder, but cannot prove it, the accuser shall be put to death."

With respect,

Christopher Orloski

2007AUG17

2007AUG17

Christopher Orloski
28994-016 Unit 2H
Federal Medical Center-Butner
P.O. Box 1600
Butner, NC 27509-1600

Dr. Herbal, M/H Unit Psychologist
Federal Medical Center
P.O. Box 1600
Butner, NC 27509-1600

Subject: Treatment team change (Pyant)

Dr. Herbal:

You may perhaps recall our 2007JUL18 conversation on topic of temperature and exposure time required to freeze lettuce in 1-E food trays. In our brief exhange, we concluded that factors such as salt content and chemistry of liquids in lettuce cells would affect a freezing profile. We didn't approach the not so problematic scenario of dipping a head in liquid oxygen or liquid helium or lithium-6 deuteride for that matter.

On 2007JUL20 I was transferred to 2-H. After provision of litigative work product to Dr. Pyant, and after many face-to-face sessions with Dr. Pyant, Dr. Pyant determined on 2007JUL27 (approx) that my progress during 37 days at FMC toward competency was at 0% on a scale of 0 to 100%. Being diplomatic rather than pursuing a course of action that would cause further retention at FMC, I request a brief conversation with you to plan a release from FMC in a reasonable period of time. I would expect that in your care my progress would be measurable and pursuant to crieteria well-established in your field. I would expect that arbitrary determinations based on racial discrimination and that ad hoc disregard of available evidence are not valid protcóls in fields of social science. If relevant to competency, I am willing to discuss with you a pro se petition (appeal) active in case number 07-5210 in the U.S. Court of Appeals.

A topic I raised with Dr. Pyant, which he avoided, is the testimony in the U.S. District Court regarding "delusional" status. I wuld like the opportunity to discuss "delusional" from a medical perspective and whether delusional disorders include symptoms such as having hope for recovery in the face of great adversity and formidable circumstance. For example, I would like to discuss whether U.S. pilots such as John McCain, currently in the U.S. Senate, and Gary Powers, both previously POWs captured in enemy territory during combat/reconnaisance, are delusional because they persist until recovery and return to the U.S.

With respect,

Christopher Orloski

**FILED**

SEP 13 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

2007AUG31


Christopher Orloski
28994-016 Unit 2H
FMC-Butner
P.O.Box 1600
Butner, NC 27509-1600

Associate Warden Winkler
Federal Medical Center
P.O.Box 1600
Butner, NC 27509-1600

Subject: Medical Service and Disservice Models

Mr. Winkler:

On mental health (M/H) unit -H (popnlation in FMC) I have observed coalescence of individuals (inmates, patients, BOP/PHS staff) into groups having objectives to harm other persons on the unit. I refer to these groups as "wolf packs" as they exhibit operational protocols similar to gangs studied in Washington, DC. In fact, the protocols are so similar, that the formation of wolf packs in DC may be attributed to their creation in acilities such as FMC, where wolf pack coalescence is fostered by FMC staff (BOP/PHS). This is a case where the egg definitely came before the chicken and the egg is incubated at FMC.

The formation o wolf packs is in alignment with the observed FMC mission statement and hospital protocols which support models of disservice. Facility architecture and FMC staff behavior in virtually every department observed exhibit attributes which cause sickness rather than recovery from illness or alleged illness. A hospital being the cause of disease rather than the cure is contrary to medical models in all civilizations in all periods. Yet, FMC prescribes sodium polystyrene sulfonate instead of Kaopectatefor diarrhea and exposes patients to psychosocial dynamics that degrade sane, stable individuals into vitriolic, insipid murderers. FMC may justiy such hypocrisy in pursuit of a "cash cow" economic model, but the Americanpublic would surely cut the purse strings upon realization that FMC produces the exact product it claims to cure.

The wolf pack observed beginning 2007JUL20 on FMC's M/H unit 2-H (50 patients typical load) are an example of medical disservice protocols. BOUCHER/JAMES 65843-179 (unit's "orderly" is statused as "study due" (evaluation under 18 USC Secs. 4142-4147). HAMILTON/CHARLES 36532-037 is statused as "sentenced". GRIFFIN/TONY 13460-196 is "study due". ROSADA/MICHAEL 28524-016: "study due". FMC BOP staff TAYLOR and BARNES are correctional officers on the unit. CASTLE is the unit's PHS nurse. Between 2007JUL20 and 2007AUG31 (43 days) I observed the above 7 persons operate: BOUCHER, HAMILTON, GRIFFIN, ROSADA, TAYLOR, BARNES, CASTLE.

Per request of FMC staff TAYLOR and BARNES, ordely BOUCHER performed janitorial duties with access to chemicals used to clean surfaces and floors. Due to a 2007JUL24 incident it was concluded that BOUCHER, HAMILTON and GRIFFIN were using predictive analysis to determine locations of future criminal ventures on the unit. Bottles of alcoholic beverage (fermented fruit) were presumed planted in my room to be discovered by BARNES with subsequent disciplinary report and penalty. I received a 45-day purchase suspension for possession of alcohol with which I was not associated.

When I arrived on the unit, TAYLOR supplied to me a disintegrated mattress for bedding from the janatorial closet where chemicals are stored with a blue biohazard-marked laundry bin. TAYLOR is observed to be instrumental in instructing the wolf-pack. From 2007AUG12 to 2007AUG31, I experienced a series of events in which BOUCHER, HAMILTON and GRIFFIN caused physical injury, poisoning, with chemical weapons. Symptoms were reported to PHS staff on 2007AUG20 and subsequently reported to U.S. DoJ OIG via USPS. BOUCHER, HAMILTON and GRIFFIN were verified as having distributed the chemicals to cause injury, and TAYLOR and BARNES are implicated in instigating the incidents and poisoning.

Since PHS nurse CASTLE uses inmates as informants on patient activities, CASTLE is also associated with the BOUCHER-HAMILTON-GRIFFIN wolf pack which places poisonous chemicals on bedding, clothing, property and seats of inmates. CASTLE designates patients as targets of the wolf pack. Although different weapons were observed in DC audits in 2006-2007, the protocols of FMC's inmates and DC's ex-prisoners are identical.

Wolf pack induction attempts were observed while HAMILTON introduced ROSADA to assassin protols, verbal and gesticulative symbols required to use chemical weapons, methods of requesting weapons, methods of transporting weapons in bottles, detection methods, predictive analysis methods for attack success, etc. TAYLOR, BOUCHER and HAMILTON are purported to have U.S. armed forces experience and training.

Network expansion of the wol pack is observed in other departments (education, library, food service) where BOUCHER-HAMILTON-GRIFFIN attempt to add resources to urther their ventures, including acquisition of weapons. Library clerk _____/BILL _____-___ reerences "atomic fireballs" (candy) in HAMILTON's presence after HAMILTON's reference to "alpha waves" and "ass on fire" on unit 2-H. It is noted that HAMILTON never sits in a chair when in the 2-H television room, but squats or stands. Exposure to chemical weapons on library chairs in HAMILTON's presence is verified.

It is obvious that production of murderers in a hospital is unacceptable to the American public, and that anymmandates permitting such disservice would be revoked, monitarily if necessary.

Respectfully submitted,

Christopher Orloski