UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 07-MJ-258-AK |
| | : | |
| v. | : | VIOLATIONS: 18 U.S.C. § 1038 |
| | : | (False Information and Hoaxes) |
| CHRISTOPHER ORLOSKI | : | |
| Defendant. | : | |

NOTICE OF FILING OF THE GOVERNMENT'S PROPOSED
ORDER SETTING FORTH THE PROTOCOL TO BE FOLLOWED
IN MEDICATING THE DEFENDANT INVOLUNTARILY

By Memorandum Opinion, dated May 21, 2008, the Court granted the government's request for the defendant, Christopher Orloski, to be involuntary administered antipsychotic medications. In accordance with the instructions in that Opinion, the United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following proposed order setting forth in detail the protocol the Federal Medical Center (FMC) in Butner, North Carolina plans to follow in medicating the defendant involuntarily. This protocol was developed by Mark Cheltenham, M.D., Staff Psychiatrist, at the FMC, in consultation with other FMC personnel, following a review of the defendant's individual treatment needs.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

By:     /s/
OPHER SHWEIKI
Assistant United States Attorney
Bar No. 458776
Federal Major Crimes Section
555 4th Street, N.W.
Washington, D.C. 20530
(202) 353-8822
Opher.Shweiki@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 07-MJ-258-AK |
| | : | |
| v. | : | VIOLATIONS: 18 U.S.C. § 1038 |
| | : | (False Information and Hoaxes) |
| CHRISTOPHER ORLOSKI | : | |
| Defendant. | : | |

**ORDER**

Based upon a finding of good cause shown, following consideration of the Government's request that the Court order the defendant, Christopher Orloski, to submit to the involuntary administration of antipsychotic medications, consistent with Supreme Court's decision in <u>Sell v. United States</u>, 539 U.S. 166 (2003), and following a review of the entire record herein, it is:

ORDERED that, for the reasons set forth in the Court's Memorandum Opinion, dated May 21, 2008, Mr. Orloski be involuntarily medicated; and

ORDERED that the Federal Medical Center (FMC) in Butner, North Carolina, follow the detailed protocol set forth below in administering that medication:

1) Mr. Orloski will first be presented with a copy of the court order authorizing involuntary treatment with antipsychotic medication. The treating psychiatrist will attempt to enlist Mr. Orloski's cooperation by engaging in a discussion of the available options of taking oral antipsychotic medication on a daily basis at the lowest effective dose. The recommended oral medications will include risperidone (Risperdal) at target doses ranging from 2 mg to 16 mg daily; aripiprazole (Abilify) at target doses of 15 mg to 60 mg daily; olanzepine (Zyprexa) at target doses ranging from 10 mg to 40 mg daily; perphenazine (Trilafon) at doses ranging from 8 mg to 64 mg daily; fluphenazine (Prolixin) at doses ranging from 2 mg to 20 mg daily; and haloperidol (Haldol) at target doses ranging from 2 mg to 20 mg daily. Mr. Orloski will be

informed of the requirement to cooperate with nursing staff in accepting the oral medication daily at pill line.  He will be informed of the requirement to fully cooperate with all requests by the nursing staff to perform a "mouth check", which is a brief visual inspection of a patient's mouth after accepting the medication.  The purpose of a "mouth check" is to lower the risk of a patient "cheeking" his medication at pill line by concealing the tablets medication in his mouth and then spitting it out later.  Since this intervention will not prevent a determined patient from self-inducing vomiting as a means of medication non-adherence after accepting the medication at pill line, Mr. Orloski will also be informed of the requirement to cooperate with all periodic laboratory tests to measure his serum concentration of the prescribed antipsychotic medication.  This will provide additional data regarding his compliance and metabolic rate, and potentially assist with future dosing adjustments.

   As long as Mr. Orloski would be willing to cooperate with these requirements, the treating psychiatrist would prescribe one or more trials of any one of these oral medications in a flexible manner as mutually agreed with Mr. Orloski.  Trials of aripiprazole or ziprasidone would be recommended as the initial treatment due to their somewhat more favorable overall side effect profile.  Due to the somewhat higher risk of metabolic side effects, a trial of olanzepine would not be recommended unless trials of at least two of the other medications were ineffective or not well tolerated.  The goal is to achieve clinical improvement at the lowest effective dose, starting at low end of the dosing range and gradually increasing the dose as clinically indicated.  If Mr. Orloski developed intolerable side effects to any one of the medications that was not amenable to dosage adjustment or addition of adjunctive medication, the treatment regimen would be switched to another of the antipsychotic medications listed above.

2)     In the event Mr. Orloski refuses to accept the recommended treatment with oral antipsychotic medication after he has received a copy of the court order and offered an opportunity to discuss the above issues with the treating psychiatrist, treatment will be initiated with long acting antipsychotic medication as described below.  Standard correctional policies will be followed if restraints are necessary for the nursing staff to safely administer medication injections to Mr. Orloski.

3)     If Mr. Orloski initially agrees to accept the recommended treatment with oral medication but later manifests noncompliance with any part of the requirement for daily pill line attendance and daily "mouth checks," he will be assessed by the treating psychiatrist.  He will be counseled that future noncompliance for any reason will result in discontinuation of oral mediation and prompt initiation of injections of long acting antipsychotic medication.  Oral medication will continue to be offered only if he appeared genuinely motivated to comply with the treatment.

4)     Any refusal to cooperate with any scheduled laboratory tests to measure the serum level of antipsychotic medication will be viewed as a possible effort by Mr. Orloski to conceal his noncompliance by "cheeking" the prescribed oral antipsychotic medication.  If such an event occurs, the treating psychiatrist will assess Mr. Orloski's reasons for refusing the laboratory test, and determine whether switching from oral antipsychotic medication to long acting injections of antipsychotic medication is necessary.

5)     In the event treatment with injections of long acting antipsychotic psychotic medication is necessary as described above, Mr. Orloski will receive a test dose of haloperidol 5 mg, administered by intramuscular injection if he refuses to ingest this medication orally.  The

purpose of the test dose is to identify any rare idiosyncratic reaction to this medicine. If this medication is well tolerated, the following day he will receive an injection of 150 mg of haloperidol decanoate. This dose may be repeated in 2 weeks, with subsequent dose adjustments as clinically indicated every four weeks thereafter.

6) An alternative treatment with injections of long acting antipsychotic medication will involve initiating a trial of fluphenazine decanoate. In order to identify any rare idiosyncratic reaction to this medication, Mr. Orloski will need to be administered an oral test dose of oral or intramuscular fluphenazine 2 mg. If this was well tolerated, a trial of fluphenazine decanoate 12.5 mg every two weeks will be initiated and adjusted as clinically indicated.

7) An alternative treatment with injections of long acting antipsychotic medication will involve initiating a trial of long-acting risperidone. In order to identify any rare idiosyncratic reaction to this medication, Mr. Orloski will need to be administered an oral test dose of risperidone 2 mg. Unfortunately, no short acting injectable form of risperidone is available. If Mr. Orloski refuses to voluntarily ingest this medication, one strategy will be for the staff to attempt to administer a rapidly dissolving tablet of risperidone by involuntarily placing it in his oral cavity after he has been restrained and placed in a restraint chair. He will need to swallow the medication after the tablet dissolves, since it is not absorbed through the oral mucosa. If he defeats this approach by spitting out this medication, the risperidone will need to be administered via a nasogastric tube. The insertion of a nasogastric tube on a restrained and actively resisting patient is possible, but is also associated with some increased risk of medical complications, such as bleeding from injury to the soft tissues of the nose and throat, vomiting, gagging and cyanosis,

and risk of placing the tube in the pulmonary system rather than the stomach. For these reasons, treatment with long acting risperidone requires that the individual cooperate with ingesting an oral test dose of risperidone or have a past history of treatment with risperidone before treatment with long acting risperidone can be initiated.

However, if a test dose of risperidone 2 mg could be safely administered to Mr. Orloski without any evidence of rare idiosyncratic side effects, the following day an injection of long acting risperidone at a dose of 25 mg every two weeks will be initiated. Mr. Orloski will be monitored for therapeutic benefit and medication side effects, with the sustained release of this medication occurring approximately four weeks after the initial injection. Although Mr. Orloski's symptoms may begin to improve within six to eight weeks after the first injection, an adequate trial with antipsychotic medication will require at least three to four months of continuous treatment at an adequate dosage.

8)   If neuromuscular side effects emerge during the treatment with any antipsychotic medication, Mr. Orloski will be offered the lowest effective dose of adjunctive medication to manage these adverse effects. He will be offered benztropine at doses ranging from 0.5 mg to 1 mg two or three times daily as needed if he begins to manifest muscle stiffness or tremor. He will be offered propanolol at doses ranging from 10 mg to 40 mg two to three times daily as needed for restlessness. If clinically indicated he will be offered short courses of lorazepam at doses ranging from 0.5 mg to 1 mg two or three times daily as needed for short term treatment of neuromuscular side effects that do not respond to other adjunctive treatments. If Mr. Orloski's neuromuscular side effects persist despite adjunctive treatment, then he will be offered treatment with alternative antipsychotic medications.

9) If Mr. Orloski becomes agitated and combative during the process of receiving an injection, he may receive an injection of lorazepam 2 mg to assist with calming him down so that he can be safely released from restraints in a shorter period of time. An injection of bentropine 1 mg may be given in conjunction with an injection of short acting haloperidol to prevent the emergence of extrapyamidal side effects.

10) During the trial of any antipsychotic medication, Mr. Orloski will be monitored for possible development of diabetes or possible emergence of elevated serum lipids using the standard protocol at FMC, which includes monthly weights, monthly recording of his body mass index, monthly measurement of his fasting fingerstick glucose, and measurement of his serum lipids every three months. He will also be counseled on lifestyle modifications regarding the need for regular exercise and healthy dietary choices to lower the risk of developing weight gain, elevated serum lipids, or development of diabetes.

11) The metabolic monitoring procedures obviously require Mr. Orloski's cooperation with the nursing and laboratory staff. If he refuses to cooperate with such recommendations, the staff will attempt to educate him on the rationale for these interventions. If Mr. Orloski persists in his refusal to cooperate during the proposed treatment, the protocol will be enforced involuntarily at approximately 90 day intervals by having him restrained and placed in a restraint chair, after which his weight could be measured and laboratory tests could be safely collected.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE